## 71698. BROCK v. THE STATE.
(347 SE2d 230)

BENHAM, Judge.

Appellant brings this appeal from his convictions of the July 1, 1984 burglary of a Calhoun pharmacy and false report of a crime. He

maintains that evidence concerning medical treatment he received both prior to and after the burglary was erroneously admitted at trial.

1. In its case-in-chief, the State presented nine pharmacists who identified 70 prescriptions and refills they had collectively filled for the appellant from December 31, 1983 through June 27, 1984. The prescriptions authorized dispensation of Ampicillin (60 tablets); Fiorinal (24 tablets); Norcet (937 tablets); Percodan (29 tablets); Tylenol #4 (12 tablets); Tylox (253 tablets); and Viocidin (144 tablets). The authenticity of the prescriptions was never called into question. The State introduced the evidence in an effort to establish a motive, i.e., narcotic dependency, appellant had for burglarizing a pharmacy. Appellant objected, maintaining the evidence injected his character into the proceedings. Appellant also questions the propriety of the use of the evidence to establish motive.

"[N]o evidence of [a criminal defendant's] general bad character or prior convictions 'shall be admissible unless and until the defendant shall have first put his character in issue. . . ." OCGA § 24-9-20 (b). As appellant notes, the record is devoid of any intimation that appellant forged or altered any prescription in order to obtain more than that which had been legally prescribed, or that he was unable to pay for the medications. Thus, the pharmaceutical testimony reflected only that appellant had legally received large quantities of controlled substances and suggested a possibility of addiction to the painkillers. The testimony and pertinent exhibits did not necessarily place appellant's character in issue since, "after all, one who [may be dependent upon legally obtained prescription drugs] is not necessarily an immoral person." *Pilcher v. State*, 170 Ga. App. 869 (2) (318 SE2d 640) (1984).

While the evidence showing a possible addiction to legally obtained drugs was not evidence that appellant had committed another crime, it did demean appellant somewhat by portraying him as a probable abuser of narcotics and also established a compelling motive for appellant to have burglarized a pharmacy. Even if we were to assume that a demeaning portrayal of a criminal defendant constituted bad character evidence, which we do not, evidence admissible to show motive is not rendered inadmissible because it incidentally places the defendant's character in issue. *Parker v. State*, 169 Ga. App. 966 (2) (315 SE2d 683) (1984). Where a defendant is charged with the robbery or burglary of a pharmacy or drug store, evidence that the defendant used narcotics is admissible since it is relevant to the defendant's motive for committing the crime. *Synoground v. State*, 260 Ark. 756 (543 SW2d 935) (1976); *State v. Ralph*, 217 Kan. 457 (537 P2d 200) (1975); *Candelaria v. People*, 177 Colo. 136 (493 P2d 355) (1972); *State v. Guerrero*, 243 Ore. 616 (415 P2d 28) (1966); *State v. McClung*, 66 Wash. 2d 654 (404 P2d 460) (1965); *People v. O'Brand*, 92

Cal. App. 2d 752 (207 P2d 1083) (1949). See also *Archie v. State*, 137 Ga. App. 386 (1) (224 SE2d 64) (1976), wherein this court affirmed the admission of a defendant's statement that he was "in dire need of money for drugs" as tending to establish a motive for the commission of the crime charged, theft by taking. The cases and annotation cited by appellant are distinguishable from those cited above in that they concern the use of evidence of drug addiction to establish motive for a crime other than the larceny of a pharmacy or drug store.

2. Appellant testified in his own behalf and, in response to a question on cross-examination, denied receiving a package of Mepergan while he was in the hospital recovering from a nervous breakdown following his arrest for the drug store burglary. On rebuttal, the State called a nurse who testified that she was in appellant's hospital room when an unidentified man delivered a package to appellant who, the witness testified, responded, "Hallelujah, now I have some Mepergan." The nurse's testimony was admissible to impeach appellant's statement denying receipt of Mepergan while in the hospital. OCGA § 24-9-82.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED APRIL 14, 1986 —
REHEARING DENIED JUNE 27, 1986 — 

*John E. Sawhill III*, for appellant.
*Darrell E. Wilson, District Attorney*, for appellee.